THE HONORABLE RICARDO S. MARTINEZ

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MARCELA ERIVES, an individual,

    Plaintiff,

    v.

CARVANA, LLC, a foreign limited liability
company registered to do business in
Washington,

    Defendant.

Case No.: 2:22-cv-00791

**DECLARATION OF JORDAN FIRMAN IN SUPPORT OF DEFENDANT CARVANA, LLC'S MOTION TO COMPEL ARBITRATION**

I, Jordan Firman, declare as follows:

1.    I am a Senior Manager, Customer Experience for Carvana, LLC ("Carvana"). In this capacity, I have gained personal knowledge of Carvana's business operations, procedures, and document retention practices, including those described herein.

2.    Carvana is a used car retailer that sells vehicles online.

3.    On November 29, 2020, Plaintiff Marcela Erives ("Erives") executed a Retail Purchase Agreement ("RPA") and Retail Installment Contract and Security Agreement ("RIC") (collectively, the "Contract") for the online purchase and financing of a 2013 Honda Ridgeline pickup truck, vehicle identification number ("VIN") 5FPYK1F58DB012059 (the

DECLARATION OF
JORDAN FIRMAN

LAW OFFICES OF
**COZEN O'CONNOR**
A PROFESSIONAL CORPORATION
999 THIRD AVENUE
SUITE 1900
SEATTLE, WASHINGTON 98104
(206) 340-1000

"Vehicle"), from Carvana.  A true and correct copy of the Contract, which is kept in the ordinary course of Carvana's business, is attached hereto as **Exhibit A**.

4.      In connection with this purchase, Erives also executed on November 29, 2020 an Arbitration Agreement with Carvana.  A true and correct copy of this Arbitration Agreement, which is kept in the ordinary course of Carvana's business, is attached hereto as **Exhibit B**.

5.      As an online retailer, Carvana transmits to customers pertinent transaction documents for review and signature through DocuSign.  This includes contract documents, such as RPAs, RICs, and arbitration agreements.

6.      The DocuSign process requires a person to review and sign agreements using his or her unique email address.  Carvana has no access to customer's email or DocuSign accounts.  Once the transmitted documents are executed, DocuSign generates a "Certificate of Completion" noting the date of signature and unique email address used.  DocuSign then provides a copy of the signed documents and Certificate of Completion to Carvana, and Carvana stores the documents in a secure database as part of its ordinary course of business.

7.      The Certificate of Completion for the Contract and Arbitration Agreement confirms that Erives was sent, viewed, and signed these documents on November 29, 2020 using the email address marcerives90@yahoo.com.  A true and correct copy of this Certificate of Completion, Envelope ID 4598CA4228CE4E70885E556DDEEC3D6A, which is kept in the ordinary course of Carvana's business, is attached hereto as **Exhibit C**.

8.      The Arbitration Agreement provided Erives the right to reject the Arbitration Agreement without affecting any other aspect of the transaction by emailing or mailing a rejection notice to Carvana within 30 days of the Contract date.

9.      Carvana has no record of receiving a rejection notice for the Arbitration Agreement from Erives.  If Carvana received a rejection notice for the Arbitration Agreement

DECLARATION OF
JORDAN FIRMAN

LAW OFFICES OF
**COZEN O'CONNOR**
A PROFESSIONAL CORPORATION
999 THIRD AVENUE
SUITE 1900
SEATTLE, WASHINGTON 98104
(206) 340-1000

from Erives, it would be stored in Carvana's records maintained in the ordinary course of business.

****

10.     If called as a witness, I would and could competently testify to the foregoing, which is within my personal knowledge or based upon information that I gathered within the course and scope of my duties as Senior Manager, Customer Experience for Carvana.

I declare under penalty of perjury and pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct.

Executed on this _14_ day of July, 2022, in Phoenix, Arizona.

_____
Jordan Firman

DECLARATION OF
JORDAN FIRMAN

LAW OFFICES OF
COZEN O'CONNOR
A PROFESSIONAL CORPORATION
999 THIRD AVENUE
SUITE 1900
SEATTLE, WASHINGTON 98104
(206) 340-1000

# Exhibit A

THIS IS A COPY
This is a copy view of the Authoritative Copy held
by the designated custodian

# Retail Purchase Agreement
## – Arizona –

| BUYER | Marcela Erives | |
|---|---|---|
| ADDRESS LINE 1 | 1116 SEMINOLE ST | |
| ADDRESS LINE 2 | | |
| CITY, STATE, ZIP | LOS ALAMOS NM 87544-2822 | |
| PHONE(S) | RES. 6239861369 | BUS. |

| **VEHICLE BEING PURCHASED** | | | |
|---|---|---|---|
| Year 2013 | Make Honda | Model Ridgeline | Body Pickup |
| Lic. Plate # | License Tab # | Expires | Mileage 44298 | Color Burgundy |

VIN #   5FPYK1F58DB012059

Dealership provides an express limited warranty. Buyer has a copy of the limited warranty agreement. No other express or implied warranties are made by the Dealership and there will be no implied warranties of merchantability or fitness for a particular purpose unless required by applicable law. Seller does not have to make any repairs on this vehicle, except as required under the limited warranty and applicable state law. Buyer(s) may also have other rights that vary from state to state.

Buyer(s) ("you") and Dealership ("we") agree that this Retail Purchase Agreement (this "Agreement") is governed by federal law and the law of the state of the Dealership Address listed above. We are agreeing to sell to you and you are agreeing to buy from us the Vehicle at our licensed dealership location shown above, subject to the terms and conditions of this Agreement. We agree to transfer to you and you agree to accept title and ownership of the Vehicle in the state of the Dealership Address listed above. When we transfer title and ownership of the Vehicle to you, you may take delivery of the Vehicle from us at our licensed dealership location shown above or you may make arrangements with us to have the Vehicle transported to another mutually agreed-upon location for your pick-up.

| **TRADE IN VEHICLE #1** | | | |
|---|---|---|---|
| Year N/A | Make N/A | Model N/A | Body N/A |
| Lic. Plate # N/A | License Tab # | Expires | Mileage N/A | Color N/A |

VIN #   N/A

| **TRADE IN VEHICLE #2** | | | |
|---|---|---|---|
| Year N/A | Make N/A | Model N/A | Body N/A |
| Lic. Plate # N/A | License Tab # | Expires | Mileage N/A | Color N/A |

VIN #   N/A

*ME*
_____ Buyer's Initials

Date   12/05/2020     Phone   1-800-333-4554

Dealership   CARVANA, LLC

Address   600 S 94th AVE

City, State, Zip   TOLLESON AZ 85353-2820

Stock Number   2000761998

THE INFORMATION YOU SEE ON THE WINDOW FORM FOR THIS VEHICLE IS PART OF THIS CONTRACT. INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF SALE.

LA INFORMACION QUE VE ADHERIDA EN LA VENTANILLA FORMA PARTE DE ESTE CONTRATO. LA INFORMACION CONTENIDA EN ELLA PREVALECE POR SOBRE TODA OTRA DISPOSICION INCLUIDA EN EL CONTRATO DE COMPRAVENTA.

| | | |
|---|---|---|
| 1 | Selling price | $24,990.00 |
| 2 | Sales Tax | $1,000.32 |
| 3 | NM Registration Fee | $44.00 |
| 4 | Title Fee | $5.00 |
| 5 | Beautification Fee | $0.50 |
| 6 | Tire Recycling Fee | $1.50 |
| 7 | Admin Fee | $2.00 |
| 8 | Transaction Fee | $3.00 |
| 9 | MFRA Fee | $2.00 |
| 10 | Transit Charge | $590.00 |
| 11 | Powertrain | $1,150.00 |
| 12 | **Subtotal** (Selling Price + Delivery Fee + Fees + Taxes) | **$27,788.32** |
| 13 | Cash Down Payment | $5,000.00 |
| 14 | Total Down Payment (Cash Down Payment) | $5,000.00 |
| 15 | Balance Due (Subtotal - Total Down Payment) | $22,788.32 |

| **TOTAL BALANCE DUE** (BALANCE DUE + TRADE-IN BALANCE) | **$22,788.32** |
|---|---|

**FINANCE CHARGE**
The dollar amount the credit will cost you

$   5,002.11
If financed, interest charged on the principal amount. See Retail Installment Contract for more information.

C100AZ 8/1/18

THIS IS A COPY
This is a copy view of the Authoritative Copy held
by the designated custodian

The seller hereby warrants that this vehicle will be fit for the ordinary purposes for which the vehicle is used for 15 days or 500 miles after delivery, whichever is earlier, except with regard to particular defects disclosed on the first page of this agreement. You (the purchaser) will have to pay up to $25.00 for each of the first two repairs if the warranty is violated.

> **NOTICE TO THE BUYER(S):** THE PAYOFF BALANCE REFERRED TO IN ESTIMATED PAY-OFF AND THE FEES REFERRED TO IN THE ABOVE LINE ITEMS ARE ESTIMATES, AT THE TIME THE BALANCES AND FEES ARE VERIFIED AND CONTRACT DETERMINED, APPROPRIATE ADJUSTMENTS, IF NECESSARY, WILL BE MADE. ANY DIFFERENCE IN THE PAYOFF AMOUNT IS THE RESPONSIBILITY OF THE BUYER(S).

**Carvana Vehicle Return Program**

We will give you the ability to return the Vehicle to Carvana and terminate this retail purchase agreement and any retail installment contract executed in connection herewith so long as:

1. You have not returned, exchanged, or swapped more than two (2) prior Vehicles to Carvana in connection with any Retail Purchase Agreements or Retail Installment Contracts associated with this transaction.
    i. If you have returned, exchanged, or swapped two (2) prior Vehicles in connection with this transaction, you will be given a one-time opportunity to decline or accept the third and final Vehicle either during the delivery or pick-up appointment unless otherwise approved by Carvana.

2. You alert Carvana by phone, text, email, or chat prior to 8pm EST on the 7th calendar day after you take delivery of the Vehicle. The day your Vehicle is delivered, regardless of delivery time, will count as the first day of your seven (7) day test own;

3. You return the Vehicle in one of two ways:
    i. Within a Carvana service area: you make the Vehicle available for pick up by a Carvana representative at a predetermined time and location the following business day. Cost of pickup will be paid by Carvana. Service area is designated by zip code and subject to change without prior notice.
    ii. Outside of a Carvana service area: Carvana will arrange for transport of the Vehicle. The cost will be paid by you. Service area is designated by zip code and subject to change without prior notice.

4. The Vehicle is free of all liens and encumbrances other than the lien created in your favor by any applicable retail installment contract executed between you and Carvana;

5. The Vehicle is in the same condition you received it except for reasonable wear and tear (evidence of smoking in the Vehicle during the 7 Day Test Own is not considered reasonable wear and tear) and any mechanical problem that becomes evident after delivery that was not caused by you;

6. You have not driven it more than 400 miles;

7. The Vehicle is without damage or having been in an accident that occurred after you took delivery of the Vehicle;

8. If the Vehicle is driven more than 400 miles, at Carvana's election you will pay $1.00 per mile for each mile the Vehicle was driven over 400 miles. If you return your Vehicle and had traded in a vehicle to us, we will return your trade to you only after you have paid all fees required for the return of the Vehicle. Required fees may not be paid by personal check. Required fees will be deducted from your down payment refund. If you paid your down payment via ACH transaction, we will pay you and/ or return your trade in by the earlier of (a) when you provide evidence that the ACH transaction was cleared, or (b) 15 business days after your purchase of the Vehicle. So long as you meet all conditions for return of the Vehicle outlined above, Carvana will not report this account to the credit bureaus.

9. Any Trade-In vehicles with current liens which are involved in this transaction will be paid off once sale is complete and after the test own period ends. You should continue to make payments on liens if payment is due within your test own period. The lien holder of the Trade-In vehicle will reimburse you for any over-payment after the transaction is complete.

**Trade in Representation and Warranty:** You represent and warrant that the trade-in described in the Buyer's order/Purchase Agreement, if any, has not been misrepresented and air pollution equipment is on the trade-in and is working, you will provide to us a Certificate of Title (or documents that allow us to obtain it), free of any lien(s) or encumbrance(s), (i.e. titling issues, child support or amounts due to government titling or registration agency,) and you have the right to sell the trade-in.

**General:** At time of delivery, or at any time during your 7 Day Test Own period, you may reject your vehicle and terminate your vehicle financing and purchase for any reason.

In certain states, dealers may not place any insignia that advertises the dealer's name on a vehicle unless the Buyer consents thereto in the purchase contract for such vehicle. Unless Buyer notifies dealer otherwise in writing, Buyer hereby expressly consents to the placement of Carvana's name on the vehicle's license plate cover. Buyer expressly waives any compensation for the placement of dealer's name on the vehicle.

DocuSign Envelope ID: 4598CA42-28C5-4E70-885F-556DBEEC2D6A

THIS IS A COPY
This is a copy view of the Authoritative Copy held
by the designated custodian

**Default:** You will be in default if any of the following occurs (except as may be prohibited by law): 1. You gave us false or misleading information on carvana.com or on the telephone, via email or text message, in person, or any other communication medium in connection with the purchase of the Vehicle relating to this Agreement; 2. If we cannot verify any information that you have provided us; 3. If we discover a material adverse change in any information you provided us during our review process; 4. If you do not cooperate in the verification and review process described below; 5. You fail to keep any other agreement or promise you made in this Agreement and/or any retail installment contract executed in connection herewith.

**Assignment:** You may not assign your rights under this Agreement and/or any retail installment contract executed in connection herewith without our permission.

**After-sale Review and Verification Process:** The Vehicle sold to you is subject to an after-sale review and verification of the information you have provided to us. You agree to cooperate with the after-sale review and verification process.

**Limitation on Damages: Unless prohibited by law, you shall not be entitled to recover from us any consequential, incidental or punitive damages, damages to property or damages for loss of use, loss of time, loss of profits, or income or any other similar damages. We are not liable for any failure or delay in delivering the vehicle to you if it is beyond our control, not our fault or we are not negligent.**

**References:** To the extent you are financing your purchase with us, we may contact your employer or your references to verify the information you provided to us in connection with this Agreement.

**Odometer (mileage):** Each of your and our representations regarding odometer readings are subject to information provided by others, including government agencies. We each understand that this information is not always accurate. As permitted by applicable law, neither us is responsible for any inaccuracies in this information to the extent it is not the party's fault.

**Disclosure on Airbags:** We disclaim any knowledge of, and make no representation or warranty as to the condition or operability of the airbag(s) on the vehicle unless otherwise disclosed to you on the Carfax Vehicle History Report. You acknowledge that we have not made any representations, oral or in writing, as to the condition or operability of the airbag(s), and you accept the vehicle without representation or warranty from us. You further acknowledge that you had the opportunity to have the airbag(s) checked by someone of your choice prior to the expiration of your 7 Day Test Own Period.

**Liability Insurance:** You understand that state law requires you to purchase and maintain liability insurance. We do not provide liability insurance for you and it is not included in your Agreement. Your choice of insurance providers will not affect our decision to sell you the vehicle.

**Record Retention:** You agree that we may maintain documents and records related to the vehicle and the Agreement electronically, including, but not limited to, documents and record images, and that we may dispose of original documents. You agree that a copy of any such electronic records may be used and shall be deemed to be the same as an original in any arbitration, judicial, or non-judicial or regulatory proceeding related to the vehicle.

**Arbitration Agreement:** The arbitration agreement entered into between you and Dealer is incorporated by reference into and is part of this Agreement.

**NOTICE:** Carvana, LLC allows you to finance applicable sales/use taxes assessed on ancillary products (vehicle service contract, GPS, GAP Coverage). Whether you finance your vehicle purchase or pay cash, if your vehicle is registered in the state where you purchased your vehicle, Carvana will remit the applicable sales/use tax on ancillary products to that state on your behalf. Unless required by state law, if your vehicle is registered in a state that is not the state where you purchased the vehicle, Carvana will not collect or remit to the state of vehicle registration any applicable sales/use tax on ancillary products on your behalf unless you live in Kansas, Louisiana, or Pennsylvania.

**Buyer(s) acknowledges receipt of a copy of this Agreement. No oral agreements or understandings apply.
This agreement is not binding until accepted by an authorized representative of Carvana.**

Buyer _____*Marcela Erives*_____

Marcela Erives

Accepted By _____

Carvana

THIS IS A COPY
This is a copy view of the Authoritative Copy held
by the designated custodian

NM-102 10/10/2015

# Retail Installment Contract and Security Agreement

| Seller Name and Address | Buyer(s) Name(s) and Address(es) | Summary | |
|---|---|---|---|
| CARVANA, LLC | Marcela Erives | No. | 2000761998 |
| 600 S 94th AVE | 1116 Seminole St | Date | 12/05/2020 |
| TOLLESON AZ 85353-2820 | Los Alamos NM 87544-2822 | | |

1  Business, commercial or agricultural purpose Contract.

## Truth-In-Lending Disclosure

| Annual Percentage Rate The cost of your credit as a yearly rate. | Finance Charge The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid when you have made all scheduled payments. | Total Sale Price The total cost of your purchase on credit, including your down payment of |
|---|---|---|---|---|
| | | | | $          5,000.00 . |
| 7.617        % | $        5,002.11 | $        22,788.32 | $        27,790.43 | $        32,790.43 |

**Payment Schedule.** Your payment schedule is:

| No. of Payments | Amount of Payments | When Payments are Due |
|---|---|---|
| 63 | $          435.00 | monthly beginning  01/05/21 |
| 1 | $          385.43 | 04/05/26 |
| N/A | $          N/A | N/A |

**Security.** You are giving us a security interest in the Property purchased.

**Late Charge.** If all or any portion of a payment is not paid within 10 days of its due date, you will be charged a late charge of the lesser of 5% of the unpaid amount of the payment due or $15.00.

**Prepayment.** If you pay off this Contract early, you will not have to pay a penalty.

**Contract Provisions.** You can see the terms of this Contract for any additional information about nonpayment, default, any required repayment before the scheduled date, and prepayment refunds and penalties.

## Notice

The following notice applies if this is a contract for the sale of a used motor vehicle.

**New Mexico law requires that this vehicle will be fit for the ordinary purposes for which the vehicle is used for fifteen days or five hundred miles after delivery, whichever is earlier, except with regard to particular defects disclosed on the first page of this agreement. You (the consumer) will have to pay up to twenty-five dollars ($25.00) for each of the first two repairs if the warranty is violated.**

**Attention Consumer.** Sign here only if the dealer has told you that this vehicle has the following problem(s) and you agree to buy the vehicle on those terms:

| | |
|---|---|
| *Marcela Erives* | 12/05/2020 |
| By: Marcela Erives | Date |
| N/A | N/A |
| By: | Date |
| N/A | N/A |
| By: | Date |

Bankers Systems®
©2017 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

MSTMVLFLZNM 10/10/2015

Page 1 of 6

THIS IS A COPY
This is a copy view of the Authoritative Copy held
by the designated custodian

## Description of Property

| Year | Make | Model | Style | Vehicle Identification Number | Odometer Mileage |
|------|------|-------|-------|-------------------------------|------------------|
| 2013 | Honda | Ridgeline | Pickup | 5FPYK1F58DB012059 | 44298 |

| | | | |
|---|---|---|---|
| l | New | Other: | |
| lX | Used | N/A | |
| l | Demo | | |

## Description of Trade-In

| | | | |
|-----|-----|-----|-----|
| N/A | N/A | N/A | N/A |
| N/A | N/A | N/A | N/A |

## Spot Delivery/Conditional Delivery

**SPOT DELIVERY:**

Seller is referred to as the "dealer" in the following notice:

**Buyer has the right to void this purchase if financing is not approved within 20 calendar days after delivery of the vehicle. Buyer has the right to the return of any trade-in and all money paid by buyer, if buyer voids this contract under this paragraph. To exercise this right, buyer must return the vehicle to the dealer in the same condition as received (normal wear and tear excepted), within 48 hours of receipt of notice that financing was not approved. Dealer shall not charge any fees as long as the vehicle is returned as provided in this paragraph.**

**Buyer**

| | |
|---|---|
| N/A | N/A |
| By: | Date |
| N/A | N/A |
| By: | Date |
| N/A | N/A |
| By: | Date |

l   If checked, you agree that the following agreement regarding securing financing (*"Agreement"*) also applies: _____ N/A _____ N/A . The Agreement is part of this Contract. The Agreement will no longer control after the assignment is accepted. If there are any conflicts between the terms of the Agreement and the Contract, the terms of this Contract will apply.

*[This area intentionally left blank.]*

## Sales Agreement

**Payment.** You promise to pay us the principal amount of $ _____ 22,788.22 _____ plus finance charges accruing on the unpaid balance at the rate of _____ 7.617 _____ % per year from the date of this Contract until maturity. After maturity, or after you default and we demand payment, we will charge finance charges on the unpaid balance at _____ 7.617 _____ % per year. You agree to pay this Contract according to the payment schedule and late charge provisions shown in the *Truth-In-Lending Disclosure.* You also agree to pay any additional amounts according to the terms and conditions of this Contract.

**Down Payment.** You also agree to pay or apply to the Cash Price, on or before the date of this Contract, any cash, rebate and net trade-in value described in the *Itemization of Amount Financed.*

l     You agree to make deferred down payments as set forth in your Payment Schedule.

## Itemization of Amount Financed

| | | | |
|---|---|---|---:|
| a. | **Cash Price** of Vehicle, etc. (incl. sales tax of $ _____ 1,000.32 _____ ) | $ | 25,990.32 |
| b. | Trade-in allowance | $ | 0.00 |
| c. | Less: Amount owing, paid to (includes k): N/A | $ | N/A |
| d. | Net trade-in (b-c; if negative, enter $0 here and enter the amount on line k) | $ | 0.00 |
| e. | Cash payment | $ | 5,000.00 |
| f. | Manufacturer's rebate | $ | 0.00 |
| g. | Deferred down payment | $ | 0.00 |
| h. | Other down payment (describe) N/A | $ | 0.00 |
| i. | **Down Payment** (d+e+f+g+h) | $ | 5,000.00 |
| j. | **Unpaid balance of Cash Price** (a-i) | $ | 20,990.32 |
| k. | Financed trade-in balance (see line d) | $ | 0.00 |
| l. | Paid to public officials, including filing fees | $ | 58.00 |
| m. | Insurance premiums paid to insurance company(ies) | $ | 0.00 |
| n. | Service Contract, paid to: N/A | $ | N/A |
| o. | To: Transit Charge | $ | 590.00 |
| p. | To: Powertrain | $ | 1,150.00 |
| q. | To: N/A | $ | N/A |
| r. | To: N/A | $ | N/A |
| s. | To: N/A | $ | N/A |
| t. | To: N/A | $ | N/A |
| u. | To: N/A | $ | N/A |
| v. | To: N/A | $ | N/A |
| w. | To: N/A | $ | N/A |
| x. | To: N/A | $ | N/A |
| y. | **Total Other Charges/Amts Paid** (k thru x) | $ | 1,798.00 |
| z. | **Prepaid Finance Charge** | $ | 0.00 |
| aa. | **Amount Financed** (j+y-z) | $ | 22,788.32 |

We may retain or receive a portion of any amounts paid to others.

Retail Installment Contract-NM Not for use in transactions secured by a dwelling.

Bankers Systems®
©2017 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

VLFLZNM 10/10/2015

Page 2 of 6

THIS IS A COPY
The copy hereof of the Authoritative Copy held
by the designated custodian

## Insurance Disclosures

**Credit Insurance.** Credit life and credit disability (accident and health) are not required to obtain credit and are not a factor in the credit decision. We will not provide them unless you sign and agree to pay the additional premium. If you want such insurance, we will obtain it for you (if you qualify for coverage). We are quoting below **only** the coverages you have chosen to purchase.

**Credit Life**

| ⌐ Single | ⌐ Joint | ⌐ None |

Premium $ _____ N/A _____   Term _____ N/A _____
Insured _____ N/A _____

**Credit Disability**

| ⌐ Single | ⌐ Joint | ⌐ None |

Premium $ _____ N/A _____   Term _____ N/A _____
Insured _____ N/A _____

Your signature below means you want (only) the insurance coverage(s) quoted above. If "None" is checked, you have declined the coverage we offered.

_____ N/A _____   _____ N/A _____
By:                                    DOB

_____ N/A _____   _____ N/A _____
By:                                    DOB

_____ N/A _____   _____ N/A _____
By:                                    DOB

**Property Insurance.** You must insure the Property. You may purchase or provide the insurance through any insurance company reasonably acceptable to us. The collision coverage deductible may not exceed $ _____ 1,000 _____ . If you get insurance from or through us you will pay $ _____ N/A _____ for _____ N/A _____ of coverage.

This premium is calculated as follows:

| ⌐ $ _____ N/A _____ Deductible, Collision Cov. | $ _____ N/A _____ |
| ⌐ $ _____ N/A _____ Deductible, Comprehensive | $ _____ N/A _____ |
| ⌐ Fire, Theft and Combined Additional Cov. | $ _____ N/A _____ |
| ⌐ _____ N/A _____ | $ _____ N/A _____ |

⌐ **Single-Interest Insurance.** You must purchase single-interest insurance as part of this sale transaction. You may purchase the coverage from a company of your choice, reasonably acceptable to us. If you buy the coverage from or through us, you will pay $ _____ N/A _____ for _____ N/A _____ of coverage.

*[This area intentionally left blank.]*

## Additional Protections

**You may buy any of the following voluntary protection plans. They are not required to obtain credit, are not a factor in the credit decision, and are not a factor in the terms of the credit or the related sale of the Vehicle. The voluntary protections will not be provided unless you sign and agree to pay the additional cost.**

Your signature below means that you want the described item and that you have received and reviewed a copy of the contract(s) for the product(s). If no coverage or charge is given for an item, you have declined any such coverage we offered.

⌐ **Service Contract**
Term _____ 12 _____ months
Price $ _____ 1,150.00 _____
Coverage _____ Carvana   Power Train _____

⌐ **Gap Waiver or Gap Coverage**
Term _____ N/A _____ months
Price $ _____ N/A _____
Coverage _____ N/A _____

*Marcela Erives*                          12/05/2020
By: Marcela Erives                        Date

_____ N/A _____   _____ N/A _____
By:                                    Date

_____ N/A _____   _____ N/A _____
By:                                    Date

## Additional Terms of the Sales Agreement

**Definitions.** *"Contract"* refers to this Retail Installment Contract and Security Agreement. The pronouns *"you"* and *"your"* refer to each Buyer signing this Contract, and any guarantors, jointly and individually. The pronouns *"we"*, *"us"* and *"our"* refer to the Seller and any entity to which it may transfer this Contract. *"Vehicle"* means each motor vehicle described in the *Description of Property* section. *"Property"* means the Vehicle and all other property described in the *Description of Property* and *Additional Protections* sections.

**Purchase of Property.** You agree to purchase the Property from Seller, subject to the terms and conditions of this Contract. **You also agree that the purchase of the Property on credit takes place at the Seller's licensed location identified at the top of page 1 of this contract.** Seller will not make any repairs or additions to the Vehicle except as noted in the *Description of Property* section.

You have been given the opportunity to purchase the Property and described services for the Cash Price or the Total Sale Price. The *"Total Sale Price"* is the total price of the Property if you buy it over time.

**General Terms.** The Total Sale Price shown in the *Truth-In-Lending Disclosure* assumes that all payments will be made as scheduled. The actual amount you will pay will be more if you pay late and less if you pay early.

We do not intend to charge or collect, and you do not agree to pay, any finance charge or fee that is more than the maximum amount permitted for this sale by state or federal law. If you pay a finance charge or fee that exceeds that maximum amount, we will first apply the excess amount to reduce the principal balance and, when the principal has been paid in full, refund any remaining amount to you.

You understand and agree that some payments to third parties as a part of this Contract may involve money retained by us or paid back to us as commissions or other remuneration.

You agree that the Property will not be used as a dwelling.

**Prepayment.** You may prepay this Contract in full or in part at any time without penalty. Any partial prepayment will not excuse any later scheduled payments. If we get a refund of any unearned insurance premiums that you paid, you agree that we may subtract the refund from the amount you owe, unless otherwise provided by law.

**Governing Law and Interpretation.** This Contract is governed by the law of New Mexico and applicable federal law and regulations.

Retail Installment Contract-NM Not for use in transactions secured by a dwelling.

Bankers Systems®
©2017 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

ME

MVSIMVLFLZNM 10/10/2015

Page 3 of 6

If any section or provision of this Contract is not enforceable, the other terms will remain part of this Contract. You authorize us to correct any clerical error or omissions in this Contract or in any related document.

**Name and Location.** Your name and address set forth in this Contract are your exact legal name and your principal residence. You will provide us with at least 30 days notice before you change your name or principal residence.

**Telephone Monitoring and Calling.** You agree that we may from time to time monitor and record telephone calls made or received by us or our agents regarding your account to assure the quality of our service. In order for us to service the account or to collect any amounts you may owe, and subject to applicable law, you agree that we may from time to time make calls and send text messages to you using prerecorded/artificial voice messages or through the use of an automatic dialing device at any telephone number you provide to us in connection with your account, including a mobile telephone number that could result in charges to you.

**Default.** You will be in default on this Contract if any one of the following occurs (except as prohibited by law):

}   You fail to perform any obligation that you have undertaken in this Contract.

}   We, in good faith, believe that you cannot, or will not, pay or perform the obligations you have agreed to in this Contract.

If you default, you agree to pay our court costs and fees for repossession, repair, storage and sale of the Property securing this Contract. If we refer this Contract to an attorney who is not a salaried employee of ours, you agree to pay attorney's fees not exceeding 15 percent of the amount due and payable under the Contract, plus court costs.

If an event of default occurs as to any of you, we may exercise our remedies against any or all of you.

**Remedies.** If you are in default on this Contract, we have all of the remedies provided by law and this Contract. Those remedies include:

}   We may require you to immediately pay us, subject to any refund required by law, the remaining unpaid balance of the amount financed, finance charges and all other agreed charges.

}   We may pay taxes, assessments, or other liens or make repairs to the Property if you have not done so. We are not required to do so. You will repay us that amount immediately. That amount will earn finance charges from the date we pay it at the post-maturity rate described in the *Payment* section until paid in full.

}   We may require you to make the Property available to us at a place we designate that is reasonably convenient to you and us.

}   We may immediately take possession of the Property by legal process or self-help, but in doing so we may not breach the peace or unlawfully enter onto your premises.

}   We may then sell the Property and apply what we receive as provided by law to our reasonable expenses and then toward what you owe us.

}   Except when prohibited by law, we may sue you for additional amounts if the proceeds of a sale do not pay all of the amounts you owe us.

By choosing any one or more of these remedies, we do not give up our right to later use another remedy. By deciding not to use any remedy, we do not give up our right to consider the event a default if it happens again.

You agree that if any notice is required to be given to you of an intended sale or transfer of the Property, notice is reasonable if mailed to your last known address, as reflected in our records, at least 10 days before the date of the intended sale or transfer (or such other period of time as is required by law).

You agree that we may take possession of personal property left in or on the Property securing this Contract and taken into possession as provided above. You may have a right to recover that property.

If the Property has an electronic tracking device, you agree that we may use the device to find the vehicle.

**Obligations Independent.** Each person who signs this Contract agrees to pay this Contract according to its terms. This means the following:

}   You must pay this Contract even if someone else has also signed it.

}   We may release any co-buyer or guarantor and you will still be obligated to pay this Contract.

}   We may release any security and you will still be obligated to pay this Contract.

}   If we give up any of our rights, it will not affect your duty to pay this Contract.

}   If we extend new credit or renew this Contract, it will not affect your duty to pay this Contract.

**Warranty.** Except for the notice on the first page of this Contract, warranty information is provided to you separately.

## Security Agreement

**Security.** To secure your payment and performance under the terms of this Contract, you give us a security interest in the Vehicle, all accessions, attachments, accessories, and equipment placed in or on the Vehicle and in all other Property. You also assign to us and give us a security interest in proceeds and premium refunds of any insurance and service contracts purchased with this Contract.

**Duties Toward Property.** By giving us a security interest in the Property, you represent and agree to the following:

}   You will defend our interests in the Property against claims made by anyone else. You will keep our claim to the Property ahead of the claim of anyone else. You will not do anything to change our interest in the Property.

}   You will keep the Property in your possession and in good condition and repair. You will use the Property for its intended and lawful purposes.

}   You agree not to remove the Property from the U.S. without our prior written consent.

}   You will not attempt to sell the Property, transfer any rights in the Property, or grant another lien on the Property without our prior written consent. If we consent to a transfer, we may charge you a transfer of equity fee of $25.00.

}   You will pay all taxes and assessments on the Property as they become due.

}   You will notify us with reasonable promptness of any loss or damage to the Property.

}   You will provide us reasonable access to the Property for the purpose of inspection. Our entry and inspection must be accomplished lawfully, and without breaching the peace.

**Agreement to Provide Insurance.** You agree to provide property insurance on the Property protecting against loss and physical damage and subject to a maximum deductible amount indicated in the *Insurance Disclosures* section, or as we will otherwise require. You will name us as loss payee on any such policy. Generally, the loss payee is the one to be paid the policy benefits in case of loss or damage to the Property. In the event of loss or damage to the Property, we may require additional security or assurances of payment before we allow insurance proceeds to be used to repair or replace the Property. You agree that if the insurance proceeds do not cover the amounts you still owe us, you will pay the difference. You will keep the insurance in full force and effect until this Contract is paid in full.

If you fail to obtain or maintain this insurance, or name us as loss payee, we may obtain insurance to protect our interest in the Property. This insurance may be written by a company other than one you would choose. It may be written at a rate higher than a rate you could obtain if you purchased the property insurance required by this Contract. We will add the premium for this insurance to the amount you owe us. Any amount we pay will be due immediately. This amount will earn finance charges from the date paid at the post-maturity rate described in the *Payment* section until paid in full.

## Notices

**Note. If the primary use of the Vehicle is non-consumer, this is not a consumer contract, and the following notice does not apply. NOTICE. ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

**If you are buying a used vehicle: The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.**

**Sí compra un vehículo usado: La información que ve adherida en la ventanilla forma parte de éste contrato. La información contenida en el formulario de la ventanilla prevalece por sobre toda otra disposición en contrario incluida en el contrato de compraventa.**

Retail Installment Contract-NM Not for use in transactions secured by a dwelling.

Bankers Systems®
©2017 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

VLFLZNM 10/10/2015

Page 4 of 6

**THIS IS A COPY**
The original of the Authoritative Copy held by the designated custodian

## Third Party Agreement

(This section applies ONLY to a person who will have an ownership interest in the Property but is NOT a Buyer obligated to pay this Contract ("Third Party Owner").)

In this section only, *"you"* means only the person signing this section.

By signing below you agree to give us a security interest in the Property described in the *Description of Property* section. You also agree to the terms of this Contract except that you will not be liable for the payments it requires. Your interest in the Property may be used to satisfy the Buyer's obligation. You agree that we may renew, extend or change this Contract, or release any party or Property without releasing you from this Contract. We may take these steps without notice or demand upon you.

**You acknowledge receipt of a completed copy of this Contract.**

| N/A | | N/A |
|---|---|---|
| **By:** | | **Date** |

Signature of Third Party Owner (NOT the Buyer)

|x   **Electronic Signature Acknowledgment.** You agree that (i) you viewed and read this entire Contract before signing it, (ii) you signed this Contract with one or more electronic signatures, (iii) you intend to enter into this Contract and your electronic signature has the same effect as your written ink signature, (iv) you received a paper copy of this Contract after it was signed, and (v) the authoritative copy of this Contract shall reside in a document management system held by Seller in the ordinary course of business. You understand that Seller may transfer this Contract to another company in the electronic form or as a paper version of that electronic form which would then become the authoritative copy. Seller or that other company may enforce this Contract in the electronic form or as a paper version of that electronic form. You may enforce the paper version of the Contract copy that you received.

## Signatures

**NOTICE TO BUYER. LIABILITY INSURANCE FOR BODILY INJURY CAUSED TO YOURSELF OR TO OTHERS OR PROPERTY DAMAGE CAUSED TO OTHERS IS NOT PROVIDED WITH THIS AGREEMENT. IF YOU DESIRE LIABILITY INSURANCE COVERAGE, YOU SHOULD OBTAIN SUCH COVERAGE FROM AN AGENT OF YOUR CHOICE.**

## Signature Notices

*The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this Contract and retain its right to receive a part of the Finance Charge.*

## Signatures

**Entire Agreement.** Your and our entire agreement is contained in this Contract. There are no unwritten agreements regarding this Contract. Any change to this Contract must be in writing and signed by you and us.

| *Marcela Erives* | 12/05/2020 |
|---|---|
| By: Marcela Erives | **Date** |

| N/A | N/A |
|---|---|
| By: | **Date** |

| N/A | N/A |
|---|---|
| By: | **Date** |

You authorize us to obtain information about you, or the Vehicle you are buying, from the state motor vehicle department or other motor vehicle registration authorities.

**Notice to the Buyer. 1. Do not sign this Contract before you read it or if it contains any blank spaces. 2. You are entitled to an exact copy of the Contract you sign.**

By signing below, you agree to the terms of this Contract. You received a copy of this Contract and had a chance to read and review it before you signed it.

Buyer

| *Marcela Erives* | 12/05/2020 |
|---|---|
| By: Marcela Erives | **Date** |

| N/A | N/A |
|---|---|
| By: | **Date** |

| N/A | N/A |
|---|---|
| By: | **Date** |

Seller

| *[signature]* | 12/05/2020 |
|---|---|
| By: CARVANA, LLC | **Date** |

Retail Installment Contract-NM Not for use in transactions secured by a dwelling.

THIS IS A COPY
This is a copy view of the Authoritative Copy held
by the designated custodian

**Assignment.** This Contract and Security Agreement is assigned to

N/A

_____ ,

the Assignee, phone _____ N/A _____ . This assignment is made
under the terms of a separate agreement made between the Seller and Assignee.
|    This Assignment is made with recourse.

**Seller**


____ N/A _____

**By:** _____     **Date** _____



Retail Installment Contract-NM Not for use in transactions secured by a dwelling.

Bankers Systems ®
©2017 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

MVLFLZNM 10/10/2015

Page 6 of 6

# Exhibit B

THIS IS A COPY

This is a copy view of the Authoritative Copy held
by the designated custodian

# ARBITRATION AGREEMENT

## NOTICE OF ARBITRATION AGREEMENT

We both agree that if we have a dispute, either of us can decide to resolve it by using arbitration. Arbitration is a formal process for resolving disputes without going to court. If you want to learn more about arbitration, please navigate to the following links in your browser:

- http://info.adr.org/consumer-arbitration/
- https://www.jamsadr.com/adr-arbitration

If you wish, **you can decide to opt out and reject this arbitration agreement**, but to reject this arbitration agreement you will need to follow the instructions under the heading "Your Right to Reject this Agreement". You will need to act in the next 30 days or you lose your right to reject this arbitration agreement. It is your choice.

By choosing arbitration, we are both giving up our right to go to court (except small claims court) to resolve our dispute. In arbitration a neutral person, called an arbitrator, listens to both of us and decides how our dispute is resolved. Arbitrator decisions are enforceable, just like a court order. Unlike court orders, these decisions are subject to very limited review by a court. Once a decision is made it is final, except in very limited circumstances.

In arbitration, we both give up our right to a judge or jury, and, as a result, there is no jury trial. However, if either of us elects to use small claims court to resolve the dispute, the dispute will be resolved in small claims court rather than arbitration.

If you or we choose arbitration, only our individual claims will be arbitrated. Claims by groups of individuals or "Class" arbitrations, are not allowed. By choosing to arbitrate, you will be giving up your right to participate in a class action or a private attorney general action in court or in arbitration with respect to the dispute.

Arbitration rules are generally simpler and more limited than court rules. If you want to learn more about the rules and how they work, navigate to the following link in your browser:

- https://www.adr.org/sites/default/files/Consumer_Rules_Web.pdf

- https://www.jamsadr.com/rules-streamlined-arbitration/

The Arbitration Agreement also explains what the fees and costs for the arbitration will be, and who will pay them.

This is only a summary. As with all legal agreements, please read the entire agreement carefully before you sign. **Unless you opt out of the Arbitration Agreement, it will substantially affect your rights in the event of a dispute between you and us.**

"Us/We/Our" means Carvana, any purchaser, assignee or servicer of the Contract, all of their parent companies, and all subsidiaries, affiliates, predecessors and successors, and all officers, directors and employees of any of the forgoing. "Us/We/Our" also means any third party providing any product or service in connection with or incidental to the Contract, the sale of the vehicle and/or other goods or services covered by the Contract and/or related to the vehicle, if such third party is named as a co-defendant with us in a Claim you assert. "Us/We/Our" have these meanings only for this Agreement. This Agreement is part of, and is hereby incorporated into, the Contract. However, whenever in this Agreement the term "Contract" is used, it does not include this Agreement.

"You/Your" means you and/or any of your heirs or personal representatives.

"Contract" means the Retail Purchase Agreement (in Texas, the Buyer's Order) and/or the related Retail Installment Contract and Security Agreement (in California, Conditional Sales Contract and Security Agreement) you signed with us in connection with this purchase, and any prior Retail Purchase Agreement (in Texas, Buyer's Order) and/or Retail Installment Contract and Security Agreement (in California, Conditional Sales Contract and Security Agreement) that you previously had with us.

DocuSign Envelope ID: 4598CA42-28CE-4E70-8855-556DDE5G3D6A

THIS IS A COPY
This is a copy/scan of the Authoritative Copy held by the designated custodian

"Agreement" means this Arbitration Agreement.

"Including" and "includes" means "including but not limited to."

This Agreement describes how a Claim may be arbitrated instead of litigated in court.

"Claim" means any claim, dispute our controversy between you and us arising from or related to one or more of the following:

(a) The Contract.
(b) The vehicle or the sale of the vehicle.
(c) The provision or sale of any goods and services like warranties, insurance and extended service contracts covered by the Contract or related to the vehicle.
(d) The relationships resulting from the Contract.
(e) Advertisements, promotions or oral or written statements related to the Contract.
(f) The financing terms.
(g) Your credit applications.
(h) The origination and servicing of the Contract.
(i) The collection of amounts you owe us.
(j) Any repossession, or replevin, of the vehicle.
(k) Your personal information.
(l) The rescission or termination of the Contract.

"Claim" has the broadest reasonable meaning. It includes claims of every kind of nature. This includes initial claims, counterclaims, cross-claims, third-party claims, statutory claims, contract claims, negligence and tort claims (including claims of fraud and other intentional torts). However, notwithstanding any language in this Agreement to the contrary, a "Claim" does not include a dispute about validity, enforceability, coverage or scope of this Agreement (including, without limitation, the paragraph below captioned "No Class Actions or Private Attorney General Actions," the final sentence under the paragraph below captioned "Miscellaneous" and/or this sentence); any such dispute is for a court, and not an arbitrator to decide. This exclusion from the definition of a "Claim" does not apply to any dispute or argument that concerns the validity or enforceability of the Contract as a whole; any such dispute or argument is for the arbitrator, not a court, to decide.

Even if you and we elect to litigate a Claim in court, you or we may elect to arbitrate any other Claim, including a new Claim in that lawsuit or any other lawsuit. Nothing in that litigation waives any rights in this Agreement.

However, notwithstanding any language in this Agreement to the contrary, the term "Claim" does not include (i) any self-help remedy, such as repossession or sale of any collateral given by you to us as security for repayment of amounts owed by you under the Contract; or (ii) any individual action in court by one party that is limited to preventing the other party from using such self-help remedy and that does not involve a request for damages or monetary relief of any kind. Also, we will not require arbitration of any individual Claim you make in small claims court or your state's equivalent court, if any. If, however, you or we transfer or appeal the Claim to a different court, we reserve our right to elect arbitration.

**Your Right to Reject this Agreement. You have the right to reject this Agreement, in which event neither you nor we will have the right to require arbitration of any Claims. Rejection of this Agreement will not affect any other aspect of your Contract. In order for you to reject this Agreement, we must receive a notice in writing ("Rejection Notice") from you within 30 days of the day you enter into the Contract, stating that you reject the Agreement. Any notice received after 30 days from the Contract date will not be accepted. The Rejection Notice must include your name, address and Vehicle Identification Number (VIN). You may email the notice to arbitrationoptout@carvana.com or you may mail it to us at:** Attn: Carvana Legal, 1930 W Rio Salado Pkwy, Tempe, AZ 85281. **Emailed notices must be received by 11:59pm, Arizona time, on the 30th day from the contract date. If mailed, it must be sent via certified mail, return receipt requested. Upon receipt of your Rejection Notice, we will refund your postage cost up to $6.70. We will not refund postage cost for late notices. If the Rejection Notice is sent on your behalf by a third party, such third party must include evidence of his or her authority to submit the Rejection Notice on your behalf. If you reject this Agreement, that will not constitute a rejection of any prior arbitration between you and us.**

DocuSign Envelope ID: 4598CA42-28CF-4E70-8855-556DDE5G3D6A

THIS IS A COPY
This is a copy/print of the Authoritative Copy held
by the designated custodian

<u>Selection of Arbitration Administrator</u>. Unless prohibited by applicable laws, any Claim shall be resolved, on your election or ours, by arbitration under this Agreement.

You may select as the administrator either of the organizations listed at the end of this Agreement. If we want to arbitrate, we will tell you in writing. That may include a motion to compel arbitration that we file in court. You will have 20 (twenty) days to select the administrator (or, if you dispute our right to require arbitration of the Claim, 20 (twenty) days after that dispute is finally resolved). If you do not choose an administrator within the 20-day period, we will do so.

If for any reason the administrator is unable, unwilling, or ceases to be the administrator, you will have 20 (twenty) days to choose the other organization listed at the end of this Agreement. If you do not select a new administrator within that period, we will do so. If neither organization is willing or able to be the administrator, then the administrator will be selected by the court. Notwithstanding any language in this Agreement to the contrary, no arbitration may be administered, without the consent of all parties to the arbitration, by any administrator that has in place a formal or informal policy that is inconsistent with the paragraph below captioned "No Class Action or Private Attorney General Action."

If a party files a lawsuit in court asserting Claim(s) that are subject to arbitration and the other party files a motion to compel arbitration with the court which is granted, it will be the responsibility of the party prosecuting the Claim(s) to commence the arbitration proceeding.

<u>Location of Hearing</u>. Any arbitration hearing you attend shall be in the federal judicial district of your residence.

<u>No Class Action or Private Attorney General Action</u>. Notwithstanding any language herein to the contrary, if you or we elect to arbitrate a Claim, neither you nor we will have the right to: (1) participate in a class action in court or in arbitration, either as a class representative, class member or class opponent; (2) act as a private attorney general in court or in arbitration, or (3) join or consolidate your Claim(s) with claims of any other person, and the arbitrator shall have no authority to conduct any such class, private attorney general or multiple-party proceeding. This paragraph does not apply to any lawsuit filed against us in court by a state or federal government agency even when such agency is seeking relief on behalf of a class of buyers/borrowers including you. This means that we will not have the right to compel arbitration of any claim brought by such an agency.

<u>Notice and Cure; Special Payment</u>: Prior to initiating a Claim, you may give us a written Claim Notice describing the basis of your Claim and the amount you would accept in resolution of the Claim, and a reasonable opportunity, not less than 30 days, to resolve the Claim. If (i) you submit a Claim Notice in accordance with this Paragraph on your own behalf (and not on behalf of any other party); (ii) you cooperate with us by promptly providing the information we reasonably request; (iii) we refuse to provide you with the relief you request; and (iv) the arbitrator subsequently determines that you were entitled to such relief (or greater relief), you will be entitled to a minimum award of at least $7,500 (not including any arbitration fees and attorneys' fees and costs to which you will also be entitled).

<u>Fees and Expenses</u>. An arbitration administrator and arbitrator may waive or reduce its fees for financial hardship. If you ask in writing, we will pay all administrator and arbitrator fees up to $2,500 that the administrator will not waive for any Claims you assert in good faith.

We will consider in good faith your request to pay all or part of any administrator or arbitrator fees over $2,500 ("additional fees"). To the extent we do not approve your request, if the arbitrator issues an award to you, we will still pay you for additional fees you must pay the administrator and/or arbitrator as follows:

(1) In the case of additional fees based on the amount of your Claim or the value of the relief you sought, we will pay you an amount equal to the fees you would have paid if the amount of your Claim or the value of the relief you sought had been the amount or value of the award to you.
(2) In the case of other additional fees not based on the amount of your Claim or the value of the relief you sought, we will pay you for the amount of such additional fees.
(3) If we are required to pay any greater sums under applicable law or in order for this Agreement to be enforced, we will pay such amounts.

THIS IS A COPY
This is a copy/view of the Authoritative Copy held
by the designated custodian

We will bear the administrator and arbitrator fees we are normally required to pay and will also bear the expense of our attorneys, experts and witnesses, except where applicable law and the Contract allow us to recover attorneys' fees and/or court costs in a collection action we bring. You will bear the expense of your attorneys, experts and witnesses if we prevail in an arbitration. However, in an arbitration you commence, we will pay your reasonable fees if you prevail or if we must bear such fees in order for this Agreement to be enforced. Also, we will bear any fees if applicable law requires us to.

Applicable Law, Award of Arbitrator and Right to Appeal. Because the Contract involves a transaction in interstate commerce, the Federal Arbitration Act ("FAA") governs this Agreement. The arbitrator shall apply applicable substantive law consistent with the FAA. The arbitrator shall apply applicable statutes of limitations. The arbitrator is authorized and given the power to award all remedies that would apply if the action were brought in court. Either party may make a timely request for a brief written explanation of the basis for the award. The arbitrator shall not apply federal or state rules of civil procedure or evidence.

Judgment on the arbitrator's award may be entered in any court with jurisdiction. Otherwise, the award shall be kept confidential.

The arbitrator's decision is final and binding, except for any right of appeal provided by the FAA. However, if the amount of the Claim exceeds $50,000 or involves a request for injunctive or declaratory relief that could foreseeably involve a cost or benefit to either party exceeding $50,000, any party can appeal the award to a three-arbitrator panel administered by the administrator, which panel shall reconsider any aspect of the initial award requested by the appealing party. The decision of the panel shall be by majority vote. Reference in this Agreement to "The arbitrator" shall mean the panel of arbitrators if an appeal of the arbitrator's decision has been taken. The costs of such an appeal will be borne in accordance with the paragraph captioned "Fees and Expenses" above.

Miscellaneous. This Agreement survives payment of all amounts you owe, if any, under the Contract. It also survives your bankruptcy and any sale by us of your Contract.

If there is a conflict or inconsistency between the administrator's rules and this Agreement, this Agreement governs. If there is a conflict or inconsistency between this Agreement and the Contract, this Agreement governs. If a court or arbitrator deems any part of this Agreement invalid or unenforceable under any law or statute consistent with the FAA, the remaining parts of this Agreement shall be enforceable despite such invalidity. However, if a court limits or voids any part of the above paragraph captioned "No Class Actions or Private Attorney General Actions" in any proceeding, then this entire Agreement (except for this sentence) shall be null and void with respect to such proceeding, subject to the right to appeal such limitation or voiding.

This Agreement (if you do not reject) will supersede any prior arbitration agreement between you and us with respect to any Claim.

THIS IS A COPY
The original copy of the Authoritative Copy held
in the electronic vault

**BY SIGNING BELOW, YOU EXPRESSLY AGREE TO THE ABOVE AGREEMENT. THE AGREEMENT MAY SUBSTANTIALLY LIMIT YOUR RIGHTS IN THE EVENT OF A DISPUTE. YOU ALSO ACKNOWLEDGE RECEIVING A COMPLETED COPY OF THIS AGREEMENT.**

_Marcela Erives_

| Customer Signature | Customer Signature |

By: _____     Date: _____12/05/2020_____

Authorized Signature

**ARBITRATION ADMINISTRATORS**

If you have a question about the administrator mentioned in this Agreement or if you would like to obtain a copy of their arbitration rules or fee schedules, you can contact them as follows:

American Arbitration Association (AAA)
13455 Noel Road, Suit 1750
Dallas, TX 75240-6620
www.adr.org

J.A.M.S./Endispute
700 11th Street, NW, Suite 450
Washington, DC 20001
www.jamsadr.com/arbitration
(800) 352-5267

# Exhibit C



## Certificate Of Completion

Envelope Id: 4598CA4228CE4E70885E556DDEEC3D6A
Subject: Your Carvana Contracts - 1602186 - 9060685
eOriginal Transaction Vault ID: 886988716
Source Envelope:
Document Pages: 32
Certificate Pages: 5
AutoNav: Enabled
EnvelopeId Stamping: Enabled
Time Zone: (UTC-08:00) Pacific Time (US & Canada)

Signatures: 12
Initials: 16

Status: Completed

Envelope Originator:
Carvana, LLC
1930 W Rio Salado Pkwy.
Tempe, AZ  85281
Tan.Nguyen@Carvana.com
IP Address: 40.83.179.222

## Record Tracking

Status: Original
    11/29/2020 11:24:00 AM
Status: Authoritative Copy (11 of 11 documents)
    11/29/2020 12:00:31 PM
Status: Receipt Confirmed
    11/29/2020 12:01:24 PM

Holder: Carvana, LLC
    Tan.Nguyen@Carvana.com
Holder: Carvana, LLC
    Tan.Nguyen@Carvana.com
Holder: Carvana, LLC
    Tan.Nguyen@Carvana.com

Location: DocuSign

Location: DocuSign

Location: Carvana

| Signer Events | Signature | Timestamp |
|---|---|---|
| Marcela Erives<br>marcerives90@yahoo.com<br>Security Level:<br>.Email<br>ID: 2db668ce-3222-44a7-85a5-b51d5eb142d1<br>11/29/2020 11:24:07 AM | *Marcela Erives*<br><br>Signature Adoption: Pre-selected Style<br>Using IP Address: 73.242.148.206 | Sent: 11/29/2020 11:24:05 AM<br>Viewed: 11/29/2020 11:24:57 AM<br>Signed: 11/29/2020 12:00:28 PM |
| **Electronic Record and Signature Disclosure:**<br>    Accepted: 11/29/2020 11:24:57 AM<br>    ID: b20676ad-ec79-42d2-bdaa-aeb90c32f0e0 | | |

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

| Carbon Copy Events | Status | Timestamp |
|---|---|---|

| Witness Events | Signature | Timestamp |
|---|---|---|

| Notary Events | Signature | Timestamp |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 11/29/2020 11:24:05 AM |
| Certified Delivered | Security Checked | 11/29/2020 11:24:57 AM |
| Signing Complete | Security Checked | 11/29/2020 12:00:28 PM |
| Completed | Security Checked | 11/29/2020 12:00:28 PM |

| Payment Events | Status | Timestamps |
|---|---|---|

**Electronic Record and Signature Disclosure**

**ELECTRONIC RECORD AND SIGNATURE DISCLOSURE**

From time to time, Carvana (we, us or Company) may be required by law to provide to you certain written notices or disclosures. Described below are the terms and conditions for providing to you such notices and disclosures electronically through your DocuSign, Inc. (DocuSign) Express user account. Please read the information below carefully and thoroughly, and if you can access this information electronically to your satisfaction and agree to these terms and conditions, please confirm your agreement by clicking the 'I agree' button at the bottom of this document.

**Getting paper copies**

At any time, you may request from us a paper copy of any record provided or made available electronically to you by us. For such copies, as long as you are an authorized user of the DocuSign system you will have the ability to download and print any documents we send to you through your DocuSign user account for a limited period of time (usually 30 days) after such documents are first sent to you. After such time, if you wish for us to send you paper copies of any such documents from our office to you, you will be charged a $0.00 per-page fee. You may request delivery of such paper copies from us by following the procedure described below.

**Withdrawing your consent**

If you decide to receive notices and disclosures from us electronically, you may at any time change your mind and tell us that thereafter you want to receive required notices and disclosures only in paper format. How you must inform us of your decision to receive future notices and disclosure in paper format and withdraw your consent to receive notices and disclosures electronically is described below.

**Consequences of changing your mind**

If you elect to receive required notices and disclosures only in paper format, it will slow the speed at which we can complete certain steps in transactions with you and delivering services to you because we will need first to send the required notices or disclosures to you in paper format, and then wait until we receive back from you your acknowledgment of your receipt of such paper notices or disclosures. To indicate to us that you are changing your mind, you must withdraw your consent using the DocuSign 'Withdraw Consent' form on the signing page of your DocuSign account. This will indicate to us that you have withdrawn your consent to receive required notices and disclosures electronically from us and you will no longer be able to use your DocuSign Express user account to receive required notices and consents electronically from us or to sign electronically documents from us.

**All notices and disclosures will be sent to you electronically**

Unless you tell us otherwise in accordance with the procedures described herein, we will provide electronically to you through your DocuSign user account all required notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you during the course of our relationship with you. To reduce the chance of you inadvertently not receiving any notice or disclosure, we prefer to provide all of the required notices and disclosures to you by the same method and to the same address that you have given us. Thus, you can receive all the disclosures and notices electronically or in paper format through the paper mail delivery system. If you do not agree with this process, please let us know as described below. Please also see the paragraph immediately above that describes the consequences of your electing not to receive delivery of the notices and disclosures electronically from us.

**How to contact Carvana:**
You may contact us to let us know of your changes as to how we may contact you electronically, to request paper copies of certain information from us, and to withdraw your prior consent to receive notices and disclosures electronically as follows:
 To contact us by email send messages to: jon.seitel@carvana.com

**To advise Carvana of your new e-mail address**
To let us know of a change in your e-mail address where we should send notices and disclosures electronically to you, you must send an email message to us at jon.seitel@carvana.com and in the body of such request you must state: your previous e-mail address, your new e-mail address. We do not require any other information from you to change your email address..
In addition, you must notify DocuSign, Inc to arrange for your new email address to be reflected in your DocuSign account by following the process for changing e-mail in DocuSign.

**To request paper copies from Carvana**
To request delivery from us of paper copies of the notices and disclosures previously provided by us to you electronically, you must send us an e-mail to jon.seitel@carvana.com and in the body of such request you must state your e-mail address, full name, US Postal address, and telephone number. We will bill you for any fees at that time, if any.

**To withdraw your consent with Carvana**
To inform us that you no longer want to receive future notices and disclosures in electronic format you may:

> i. decline to sign a document from within your DocuSign account, and on the subsequent page, select the check-box indicating you wish to withdraw your consent, or you may;
> ii. send us an e-mail to jon.seitel@carvana.com and in the body of such request you must state your e-mail, full name, IS Postal Address, telephone number, and account number. We do not need any other information from you to withdraw consent..  The consequences of your withdrawing consent for online documents will be that transactions may take a longer time to process..

**Required hardware and software**

| Operating Systems: | Windows2000? or WindowsXP? |
|---|---|
| Browsers (for SENDERS): | Internet Explorer 6.0? or above |
| Browsers (for SIGNERS): | Internet Explorer 6.0?, Mozilla FireFox 1.0, NetScape 7.2 (or above) |
| Email: | Access to a valid email account |
| Screen Resolution: | 800 x 600 minimum |
| Enabled Security Settings: | •Allow per session cookies<br><br>•Users accessing the internet behind a Proxy Server must enable HTTP 1.1 settings via proxy connection |

** These minimum requirements are subject to change. If these requirements change, we will provide you with an email message at the email address we have on file for you at that time providing you with the revised hardware and software requirements, at which time you will have the right to withdraw your consent.

**Acknowledging your access and consent to receive materials electronically**
To confirm to us that you can access this information electronically, which will be similar to other electronic notices and disclosures that we will provide to you, please verify that you were able to read this electronic disclosure and that you also were able to print on paper or electronically save this page for your future reference and access or that you were able to e-mail this disclosure and consent to an address where you will be able to print on paper or save it for your future reference and access. Further, if you consent to receiving notices and disclosures exclusively in electronic format on the terms and conditions described above, please let us know by clicking the 'I agree' button below.
By checking the 'I Agree' box, I confirm that:

- I can access and read this Electronic CONSENT TO ELECTRONIC RECEIPT OF ELECTRONIC RECORD AND SIGNATURE DISCLOSURES document; and

- I can print on paper the disclosure or save or send the disclosure to a place where I can print it, for future reference and access; and

- Until or unless I notify Carvana as described above, I consent to receive from exclusively through electronic means all notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to me by  Carvana during the course of my relationship with you.